# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VALETTE J. CLARK, MICHAEL CLARK, PHILLIP CLARK, and KRISTINA CLARK, <br><br> Plaintiffs, <br><br> v. <br><br> KEVIN D. CLARK, SHARON E. CLARK, OPHTHALMOLOGY ASSOCIATES OF OSBORNE, INC., MARK R. ALBERTS, JUDGE KATHLEEN R. MULLIGAN, MARK E. KING, DANIEL H. GLASSER, C. KURT MULZET, and EDWARD C. FLYNN, <br><br> Defendants. | 2:15cv1328 <br> **Electronic Filing** |

## MEMORANDUM OPINION

Presently before the Court is a Motion for Leave to Proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915 (ECF No. 1), and an accompanying Amended Complaint (ECF No. 12) filed by Valette J. Clark, Michael Clark, Phillip Clark, and Kristina Clark ("Plaintiffs"). The Amended Complaint asserts claims under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c) and (d) ("RICO"), that are predicated on purported violations of various criminal statutes by Kevin D. Clark, Sharon E. Clark, Ophthalmology Associates of Osborne, Inc., Mark R. Alberts, Court of Common Pleas of Allegheny County Judge Kathleen R. Mulligan, Mark E. King, Daniel H. Glasser, C. Kurt Mulzet, Edward C. Flynn and others ("Defendants"). Plaintiffs have submitted numerous exhibits in support of the Amended Complaint. *See, e.g.*, ECF No.s 11 & 13. This court exercises subject-matter jurisdiction

pursuant to 28 U.S.C. § 1331 (federal question). For the reasons that follow, Plaintiffs' Motion to Proceed *in forma pauperis* will be granted and Plaintiffs' Amended Complaint will be dismissed.

The United States Court of Appeals for the Third Circuit has instructed the district courts to utilize a two-step analysis to determine whether to direct service of a complaint where the plaintiff seeks to proceed *in forma pauperis*. First, the court must determine whether the litigant is indigent within the meaning of 28 U.S.C. § 1915(a). Second, the court must determine whether the complaint is frivolous or malicious under 28 U.S.C. § 1915(d). *Roman v. Jeffes*, 904 F.2d 192, 194 n. 1 (3d Cir. 1990) (citing *Sinwell v. Shapp*, 536 F.2d 15 (3d Cir. 1976)); *Schneller v. Abel Home Car, Inc.*, 389 F.App'x 90, 92 (3d Cir. 2010).

Here, the court finds Plaintiffs to be without sufficient funds to pay the required filing fee. Accordingly, they will be granted leave to proceed *in forma pauperis*.[1]

In *Neitzke v. Williams*, 490 U.S. 319 (1989), the Supreme Court identified two types of legally frivolous complaints: (1) those based upon indisputably meritless legal theory, and (2) those with factual contentions which clearly are baseless. *Id.* at 327. An example of the first is where a defendant enjoys immunity from suit, and an example of the second is a claim describing a factual scenario which is fanciful or delusional. Id. In addition, Congress has expanded the scope of § 1915 to require that the court be satisfied that the complaint states a

---

[1] The Third Circuit granted Plaintiffs *in forma pauperis* status on January 5, 2016, in conjunction with a filing seeking a Writ of Mandamus. (ECF No. 8 at 2).

2

claim upon which relief can be granted before it directs service; if it does not, the action shall be dismissed. 28 U.S.C. § 1915(e)(2)(B)(i).[2]

It is well-settled that in reviewing a motion to dismiss under Rule 12(b)(6) "[t]he applicable standard of review requires the court to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party. *Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989). Under the Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561 (2007), dismissal of a complaint is proper only when the averments of the complaint plausibly fail to raise directly or inferentially the material elements necessary to obtain relief under a viable legal theory of recovery. *Id.* The allegations of the complaint must be grounded in enough of a factual basis to move the claim from the realm of mere possibility to one that shows entitlement by presenting "a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 663 (quoting *Twombly*, 550 U.S. at 570).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In contrast, pleading facts that only offer "'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" nor will advancing only factual allegations that are "'merely consistent with' a defendant's liability.'" *Id.* Similarly, tendering only "naked assertions" that are devoid of "further factual enhancement" falls short of presenting sufficient

---

[2] Whether Plaintiffs' Amended Complaint fails to state a claim upon which relief can be granted under § 1915(e) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). See *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999). Among other things, under this standard the court must determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

3

factual content to permit an inference that what has been presented is more than a mere possibility of misconduct. *Id.*; *see also Twombly*, 550 U.S. at 563 n. 8 (A complaint states a claim where its factual averments sufficiently raise a "'reasonably founded hope that the [discovery] process will reveal relevant evidence' to support the claim.") (quoting *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 347 (2005); *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 741 (1975)); *accord Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (a court need not credit "bald assertions" or "legal conclusions" in assessing a motion to dismiss) (citing with approval Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1357 (3d ed. 1997) ("courts, when examining 12(b)(6) motions, have rejected 'legal conclusions,' 'unsupported conclusions,' 'unwarranted inferences,' 'unwarranted deductions,' 'footless conclusions of law,' or 'sweeping legal conclusions cast in the form of factual allegations.'").

This is not to be understood as imposing a probability standard at the pleading stage. *Iqbal*, 556 U.S. at 678 ("'The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.'"); *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 235 (3d Cir. 2008) (same). Instead, "[t]he Supreme Court's *Twombly* formulation of the pleading standard can be summed up thus: 'stating…a claim requires a complaint with enough factual matter (taken as true) to suggest the required element…[and provides] enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.'" *Phillips*, 515 F.3d at 235; *see also Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) ("'The complaint must state 'enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.'") (quoting *Phillips*, 515 F.3d at 235) (citations omitted). "Once a claim has been

4

stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563.

It is also well-settled that pleadings filed by *pro se* litigants are to be construed liberally. *McNeil v. United States*, 508 U.S. 106, 113 (1993); *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002). And in such circumstances the court has an obligation to "apply the applicable law, irrespective of whether a *pro se* litigant has mentioned it by name." *Higgins*, 293 F.3d at 688 (quoting *Holley v. Dep't of Veterans Affairs*, 165 F.3d 244, 247 – 48 (3d Cir. 1999)).

The Amended Complaint advances the following claims:

(1) RICO claim for mail, wire, and bank fraud in violation of 18 U.S.C. §§ 1341, 1343, and 1344 (ECF No. 12 at 151);

(2) RICO claim for honest services fraud in violation of 18 U.S.C. § 1346 (ECF No. 12 at 152);

(3) RICO claim for extortion in violation of 18 U.S.C. § 1951 (ECF No. 12 at 153);

(4) RICO claim for extortion and robbery in violation of 18 U.S.C. § 1951 (ECF No. 12 at 154);

(5) RICO claim for obstruction of justice in violation of 18 U.S.C. § 1503 (ECF No. 12 at 155);

(6) RICO claim for tampering with a witness, victim, or informant in violation of 18 U.S.C. § 1512(a)(2)(A) (ECF No. 12 at 157); and

(7) RICO claim for conspiracy to retaliate against a witness, victim, or informant in violation of 18 U.S.C. § 1513(f) (ECF No. 12 at 158).

Plaintiffs' claims arise from prior proceedings in the Court of Common Pleas of Allegheny County. Plaintiff Valette J. Clark, and her children Michael, Phillip, and Kristina,

became involved with the family court system around 2001, in an effort to receive a divorce settlement and spousal and child support from her severely abusive husband, Kevin D. Clark. Judge Kathleen R. Mulligan presided over most of the family and civil proceedings which followed over the next fourteen years. Both Valette and Kevin employed counsel to litigate their disputes. Criminal authorities were even involved when allegations of physical and sexual abuse of Plaintiffs at the hands of Kevin were reported. Plaintiffs claim that despite lengthy efforts, and the employment of various attorneys, Valette was never able to obtain the support to which she and her children were entitled. Instead, due to the concerted efforts of Defendants, the family and civil cases dragged on for years, and resulted in significant debts. It is Plaintiffs' contention that the lengthy, expensive, and largely ineffectual litigation process was the design of Defendants via a common scheme to generate legal fees and costs for the government and private parties, and to preserve the assets of Kevin Clark. Plaintiffs also allege that various County officials have assisted in perpetuating the pattern of racketeering, including Allegheny County Court of Common Pleas Judges Ronald Folino and Kimberly Berkley Clark, "Estair Kotsagrelos," Kimberly Zombeck of Allegheny County Court Records, a psychologist providing child custody evaluations for the Family Division of the Allegheny Court of Common Pleas, and so forth. Plaintiffs aver that Defendants together constitute members of an entity referred to as the Allegheny County Court Enterprise ("ACCE").

      Plaintiffs' alleged damages from the operation of the ACCE arise from the failure to obtain or be paid proper support, not receiving appropriate or favorable rulings and having to pay for ongoing legal representation or otherwise enduring the effects of adverse rulings throughout the fifteen year ordeal. Plaintiffs also claim that a recent IRS lien, although now released, was

based in part on Valette's failure to receive proper distribution in the divorce proceeding, leaving her with tax liability on a partially liquidated 401K retirement plan.

As an initial matter, the court notes that Judge Kathleen R. Mulligan is immune to all claims contained in Plaintiffs' Amended Complaint. Immunity from suit applies to judicial officers in the performance of their official duties, thereby relieving them from liability for judicial acts. *Azubuko v. Royal*, 443 F.3d 302, 303 (3d Cir. 2006) (citing *Mirales v. Waco*, 502 U.S. 9 (1991)). A "judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'" *Id.* (quoting *Stump v. Sparkman*, 435 U.S. 349, 356 – 57 (1978)). All of Plaintiffs' claims against Judge Mulligan arise out of Judge Mulligan's actions during proceedings before her in the Court of Common Pleas of Allegheny County, and pursuant to her duties as a judge assigned to Plaintiffs' family and civil cases. To the extent that the Amended Complaint can be construed as asserting that Judge Mulligan engaged in extra-judicial conduct in furtherance of ACCE's objectives, Plaintiffs advance nothing more than pure conjecture. As such, all claims against Judge Mulligan must be dismissed as legally meritless.

Moreover, all of Plaintiffs' claims against the judicial officials are all founded on the information that was presented in Family Court proceedings and civil proceedings that ensued in conjunction therewith. Plaintiffs seek to establish injury based on the ultimate effect of orders entered in those proceedings. As plaintiff's claims against all of the judicial officials are based on the performance of their official duties, the judicial officials clearly are entitled to judicial immunity on all claims advanced against them. As a result, all claims against the judicial officials must be dismissed.

Plaintiff's claims against the records office employees and those who were involved in providing court-mandated child psychology services also are barred by judicial immunity. The protections of judicial immunity extend to those who perform "quasi-judicial" functions. *Gallas v. Supreme Court of Pa.*, 211 F.3d 760, 772-73 (3d Cir. 2000) (citing *Forrester v. White*, 484 U.S. 219, 225 (1988) (the protections of judicial immunity extend to officials "who perform quasi-judicial functions"); *Moore v. Brewster*, 96 F.3d 1240, 1244 (9th Cir.1996) ("[Defendant], while acting as Clerk of the United States District Court ... in many of his actions performed quasi-judicial functions.... Even if ... [defendant] deceived [plaintiff] regarding the status of the [supersedeas] bond and improperly conducted hearings to assess costs, all in coordination with Judge Brewster, such acts would fall within [the defendant's] quasi-judicial duties and are thus protected by absolute immunity."); *McArdle v. Tronetti*, 961 F.2d 1083, 1085 (3d Cir. 1992) (holding that a prison physician who prepared an evaluation of an inmate pursuant to a judge's request was "functioning as an arm of the court" and "[a]s such, he was an integral part of the judicial process and is protected by the same absolute judicial immunity that protects Judge Connelly"); *Dellenbach v. Letsinger*, 889 F.2d 755, 763 (7th Cir. 1989) ("[W]e conclude on the facts before us that the court personnel are entitled to absolute quasi-judicial immunity for their alleged acts [undertaken] pursuant to the judge's instructions.").

In *Lepre v. Tolerico*, the Third Circuit ruled that Lackawanna County officials were entitled to quasi-judicial immunity because they acted pursuant to a valid bench warrant issued in a child support arrearage proceeding. 156 Fed. Appx. 522, 525 (3d Cir. 2005*)*; *see also Waits v. McGowan*, 516 F.2d 203, 206-07 (3d Cir. 1975) (same). In other words, ". . . where the defendant is directly involved in the judicial process, he may receive immunity in his own right for the performance of a discretionary act or he may be covered by the immunity afforded the

8

judge because he is performing a ministerial function at the direction of the judge." *Waits*, 516 F.2d at 206.

Here, each of the areas of injury identified by Plaintiffs are a direct consequence of rulings by various judges in the Court of Common Pleas of Allegheny County. The identified court and county employees/contractors were involved in carrying out the formal functions of the Court of Common Pleas and/or implementing or recording those orders and functions. All such individuals indisputably are entitled to quasi-judicial immunity.

It next must be determined whether Plaintiffs have pled facially plausible RICO claims. RICO authorizes a private cause of action for anyone injured when the affairs of an enterprise affecting interstate commerce are conducted, directly or indirectly, through a pattern of racketeering activity by any party employed by, or associated with, the enterprise. *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 245 (3d Cir. 2012) (citing *Genty v. Resolution Trust Corp.*, 937 F.2d 899, 906 (3d Cir. 1991)); 18 U.S.C. § 1962(c). Treble damages, costs, and attorney's fees may be awarded to "'any person injured in his business or property' by a violation of one of RICO's substantive provisions." *Schering Plow Corp.*, 678 F.3d at 245 (quoting 18 U.S.C. § 1964(c)). Racketeering activity is defined by a list of 'predicate offenses' set forth at 18 U.S.C. § 1961(1), and that list includes each of the offenses pled by Plaintiffs.

In order to plead a RICO violation pursuant to 18 U.S.C. § 1962(c) adequately, Plaintiffs' Amended Complaint must demonstrate: (1) the existence of an enterprise affecting interstate commerce; (2) that the Defendants were employed by, or associated with, the enterprise; (3) that the Defendants participated, either directly or indirectly, in the conduct or the affairs of the enterprise; and (4) that Defendants participated through a pattern of racketeering activity. *United*

*States v. Bergrin*, 650 F.3d 257, 265 (3d Cir. 2011) (citing *United States v. Irizarry*, 341 F.3d 273, 285 (3d Cir. 2003)).  For purposes of the first element, 'enterprise' has been defined as "'any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity.'" *Id.* (quoting 18 U.S.C. § 1961(4)).  Plaintiffs make no assertion that ACCE is a legal entity, and so the court must view it as an association-in-fact enterprise for RICO purposes.

An association-in-fact enterprise is a "'group of persons associated together for a common purpose of engaging in a course of conduct,' and it 'is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit separate and apart from the pattern of activity in which it engages.'" *Bergrin*, 650 F.3d at 265 (quoting *Boyle v. United States*, 556 U.S. 938, 944 – 45 (2009)).  While the definition of 'enterprise' is to be interpreted broadly, establishing the existence of the ACCE requires Plaintiffs to demonstrate the following structural attributes: (1) a shared purpose among Defendants; (2) relationships among Defendants; and (3) longevity sufficient to permit Defendants to pursue the ACCE's purpose.  *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 368 (3d Cir. 2010) (citing *Boyle*, 556 U.S. at 944).  "'The existence of an enterprise is an element distinct from the pattern of racketeering activity and proof of one does not necessarily establish the other.'"  *Id.* at 367 (quoting *Boyle*, 556 U.S. at 947).

The essence of the § 1962(c) claims contained in Plaintiffs' 163 page, 481 paragraph Amended Complaint is that Defendants engaged in conduct meant to indefinitely prolong Plaintiffs' civil and family cases for the sole purpose of generating income for the individuals involved.  (ECF No. 12 at ¶¶ 61, 411, 415).  ACCE was the vehicle for this scheme, and has allegedly been actively working against Plaintiffs since 2001.  (*Id.* at ¶ 414).  But Plaintiffs'

sweeping narrative fails to set forth actual facts that paint a plausible picture of Plaintiffs' former legal counsel, Kevin D. Clark's legal counsel, Judge Kathleen R. Mulligan, and third parties such as Plaintiffs' former therapists all sharing a common purpose to needlessly prolong a complicated legal matter for personal pecuniary gain. Plaintiffs' attempt to establish that the relationship between the diverse defendants and the positions they occupied in this case was deeper than that of ordinary parties to acrimonious litigation is nothing more than pure speculation. It strains credulity to believe in the existence of a subterfuge of such scope based on the fact that Plaintiffs failed to receive their desired outcome in state court. In other words, Plaintiffs' RICO claims and assertion of the existence of ACCE are not based on sufficient facts to make entitlement to recovery plausible, and the facts advanced in the Amended Complaint do not indicate that there is a reasonable likelihood that discovery will reveal evidence substantiating Plaintiffs' claims under § 1962(c). However unfortunate the circumstances surrounding the state court litigation may be, Plaintiffs' § 1962(c) claims must be dismissed.

Similarly, Plaintiffs' RICO conspiracy claims pursuant to § 1962(d) must be dismissed due to Plaintiffs' failure to demonstrate the existence of an association-in-fact enterprise. In short, the facts as pled by Plaintiffs "fail the basic requirement that the components function as a unit, that they be 'put together to form a whole.'" *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d at 374 (quoting *Boyle*, 556 U.S. at 945).

After viewing the record in the light most favorable to Plaintiff, it is clear that Plaintiffs' Amended Complaint is grounded in indisputably meritless legal theory and otherwise fails to state a claim upon which relief can be granted. Accordingly, the Amended Complaint must be

dismissed. Appropriate orders will follow.

Date: April 25, 2016

                                                  s/David Stewart Cercone
                                                  David Stewart Cercone
                                                  United States District Judge

cc:    Valette J. Clark
        102 Greenlea Drive
        Coraopolis, PA 15108

        Michael Clark
        102 Greenlea Drive
        Coraopolis, PA 15108

        Phillip Clark
        102 Greenlea Drive
        Coraopolis, PA 15108

        Kristina Clark
        102 Greenlea Drive
        Coraopolis, PA 15108

        (*Via CM/ECF Electronic Mail and First Class Mail*)